1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10    UNITED STATES OF AMERICA,

11              Plaintiff,                    CR. NO. S-07-0282 GGH

12         vs.

13    MARIA E. STONER,                        MEMORANDUM

14
              Defendants.
15    _____/

16              The United States moved to exclude any testimony by the defense expert, Dr.

17    Globus.  The court granted the motion for the following reasons, and also refused to authorize

18    payment for Dr. Globus at trial.

19              This case was brought against defendant, Maria Stoner, (hereafter "Stoner") on

20    account of an assault by Stoner against Officer Nicole Fisher, a military police officer at Travis

21    Air Force Base, and other police officers.  It was conceded, both before trial and during trial, that

22    Stoner was alcohol inebriated on November 12, 2006, while she was riding as a passenger in her

23    car on Travis Air Force base.  Indeed, the defense conceded that she was intoxicated to the point

24    of being semi-comatose.  The defense has stated that Stoner had a blood alcohol level, taken

25    some hours after the stop of her vehicle, of a .28 BAC – a very intoxicated state.  Stoner's level

26    of intoxication could have been higher at the scene of the automobile stop, although her body

                                              1

may still have been assimilating alcohol occasioned by Stoner's  "guzzle" or "chug" of wine a short time before the stop.

At first, the focus of this case was upon Stoner's search by military police at the scene of the car stop and the assaults encountered there.  There need not be a lengthy description of the party's contentions concerning the propriety of the search here in that the asserted assaults connected to the search scene were dismissed.  Suffice it to say that when Stoner began to resist the search, she was "put down" on the ground so that she could be handcuffed.  Stoner alleges that she suffered a bump to her head during this encounter, although it is undisputed that she never complained about such, or sought treatment for such until after her release from custody.

Just before trial, the focus of the case changed to the assault which the government asserted took place in the hospital to which Stoner was sent after the encounter with the police on the scene.  It was alleged that Stoner bit and spit at Officer Nicole Fisher as Fisher was attempting to help medical personnel restrain Stoner.

At the eleventh hour, in this often continued case, Stoner determined to notify the government of an insanity claim.  At this time, Stoner's counsel retained Dr. Globus to review this claim.  Dr. Globus could only find that Stoner presently suffered from a mild depression; there is no reference to any previous, serious mental disease.   Dr. Globus opined in pertinent part:

> "Being intoxicated, having a lowered blood pressure, and being influenced by the above mentioned [prescription] drugs, she was not legally competent to consent to be searched....On being thrown down, she hit her forehead.  She was left with a hematoma.  She must have been stunned as her already impaired memory continued to fad (sic) in and out over the next few hours.  Her social judgment and impulse control were also impaired.... Head injuries, causing brain concussion or contusion, will impaired (sic) social judgment....
> Behavior is organized hierarchially.  That is social judgment is lost before memory function.  Social judgment is a cognitive function which is profoundly disrupted by *trauma and/or intoxication.*

(Emphasis added)

\\\\\\

2

1    Globus report at 4.[1]

2            The problem with Dr. Globus' opinion is that it was untethered to any recognized

3    element of the offense or defense in this action.  It also would have had the effect of leaving the

4    jury to completely speculate on what condition to what degree, aside from intoxication, was

5    affecting Stoner's mental condition.

6            A violation of 18 U.S.C. § 111(a) (simple assault on a federal officer) is a general

7    intent crime.  United States v. Jim, 211, 213 (9th Cir. 1989).  Thus, Stoner could not assert that

8    voluntary intoxication was a counter to the element of intent to be demonstrated by the

9    government.  Moreover, to the extent that any other mental affliction, aside from intoxication,

10   was working on Stoner at the time of the hospital assault, diminished capacity is not a theory

11   applicable to a general intent crime.   United States v. Twine, 873 F.2d 676, 679 (9th Cir. 1988).

12   See also United States v. Kimes, 246 F.3d 800, 806 (6th Cir. 2001) (no diminished capacity

13   theory applicable to assault offense).

14           At absolute best, one could read Dr. Globus' opinion on some undetermined-in-

15   degree loss of "social judgment" as a type of diminished capacity assertion which is not available

16   as a theory in this action.  *Nothing* in the report could be construed as a basis for the defense

17   assertion of insanity – a defense which Stoner had to prove by clear and convincing evidence.

18   This is so especially because Stoner could not rely on her intoxicated state to show insanity – *in*

19   *whole or in part*.  "We hold that under the Insanity Defense Reform Act, the defendant's

20   voluntary drug use or intoxication at the time of the crime may not be considered in combination

21   with his mental disease or defect in determining whether the defendant was unable to appreciate

22   the nature and quality of wrongfulness of his acts."  United States v. Knott, 894 F.2d 1119, 1123

23   (9th Cir. 1990).

24   \\\\\

25

26           [1] The report is sealed; however, the court's rendition herein of the opinions in the report
     are not sensitive information.

1   Dr. Globus could only opine that Stoner was "impaired," in her social judgment

2   and impulse control.  Dr. Globus could not even determine the extent to which intoxication

3   played a role in Stoner's conduct, giving as his penultimate conclusion, that the loss of "social

4   judgment" was caused by a frontal lobe injury[2], *or* was caused by intoxication, *or* both.  He

5   would leave to the jury the task of speculating that intoxication played no role in Stoner's

6   assaultive conduct (despite her conceded inebriated state), and that Stoner was laboring under a

7   mental defect caused by the bump to her head which *by itself* made her unable to appreciate the

8   wrongfulness of her acts.  The jury would be left to its complete speculation as to the degree to

9   which the bump "impaired" Stoner, if at all.  Under Daubert v. Merrel Dow etc., 509 U.S. 579

10  (1993), or Fed. R. Ev. 702, the entirety of Dr. Globus' opinions were inadmissible as "not

11  assist[ing] the trier of fact to understand the evidence or to determine a fact in issue," and as not

12  "based upon sufficient facts or data."

13   The testimony of Dr. Globus was appropriately excluded.

14  DATED: February 26, 2009

   /s/ Gregory G. Hollows
15  _____
   UNITED STATES MAGISTRATE JUDGE
16

17  stoner.memo

18

19

20

21

22

23

24

25

26  [2]The foundation for finding a frontal lobe injury of any significance, an injury belied by medical tests after-the-fact, was palpably speculative and inadmissible.